# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DYLAN LOPEZ CONTRERAS, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Civil Action No. 3:25-cv-162 ) Judge Stephanie L. Haines |
| LEONARD ODDO, *in his official capacity as Warden of Moshannon Valley Processing Center, et al.*, | ) ) ) ) ) |
| Respondents. | ) ) |

## OPINION

On May 29, 2025, Petitioner Dylan Lopez Contreras ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1) and a Motion for a Preliminary Injunction (the "PI Motion") with an accompanying Brief in Support of the PI Motion. (ECF Nos. 2–3).[1] On June 9, 2025, Respondents Leonard Oddo (in his official capacity as Warden of Moshannon Valley Processing Center), Brian McShane (in his official capacity as Acting Field Office Director of the Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"), Philadelphia Field Office), Todd Lyons (in his official capacity as Acting Director of ICE), and Kristi Noem (in her official capacity as Secretary of the Department of Homeland Security ("DHS")) (collectively, "Respondents"), through counsel, filed a Response Brief in Opposition to the PI Motion. (ECF No. 23). On June 20, 2025, Petitioner filed a Reply Brief in Support of the PI Motion. (ECF No. 41). On June 30, 2025, Respondents filed a Sur-

---

[1] Amicus, the City of New York, also filed a Brief in Support of the PI Motion. (ECF No. 30).

Additionally, on June 2, 2025, Petitioner filed a Motion for a Temporary Restraining Order. (ECF No. 7). The Court denied said motion. (ECF No. 14).

Reply Brief in Opposition to the PI Motion. (ECF No. 49). Accordingly, the PI Motion is ripe for disposition. For the following reasons, the Court **DENIES** the PI Motion at ECF No. 2.

I.   **Factual Background**[2]

Petitioner is a Venezuelan citizen who arrived in the United States in May of 2024 through the Gateway to the Americas Port of Entry at the Texas Border. (ECF No. 3 at 5; ECF No. 23 at 2). Upon his arrival, ICE officers served him a Notice of Removal (the "Notice") declaring him inadmissible and removable. (ECF No. 23-1). The Notice indicated that Petitioner arrived with a Customs and Border Protection appointment scheduled but was nonetheless an inadmissible "arriving alien" because he did not possess "valid documents to enter or reside in the United States." (*Id.* at 2). The disposition of the Notice explained that ICE processed Petitioner with a Notice to Appear and paroled him for two years into the United States pending his Immigration and Nationality Act ("INA") Section 240 hearings (i.e., removal-proceeding hearings under 8 U.S.C. § 1229a). (*Id.* at 3).

According to Petitioner, following his parole into the United States, he moved to New York City, where he lived with his mother and siblings, worked, and attended an English language learning high school for older students. (ECF No. 3 at 5). "Since arriving in the United States, [Petitioner] has experienced serious, chronic medical problems[.]" (*Id.* at 6). After his detention, Petitioner received his diagnosis of a serious medical condition. (*See* ECF No. 42 at 10).

Petitioner states that "[h]e filed an asylum application detailing his fear of his removal to Venezuela on May 28, 2024," and he "started the process of obtaining Special Immigrant Juvenile Status ('SIJS')[,]" which "is a pathway to Lawful Permanent Resident Status." (ECF No. 3 at 5–6).

---

[2] The Court derives the following factual background from: (i) assertions agreed upon by Petitioner and Respondents, (ii) Petitioner's submissions to the Court, and (iii) undisputedly authentic documents submitted to the Court.

2

On May 21, 2025, Petitioner attended an immigration hearing before the Immigration Court in New York. (ECF No. 3 at 6; ECF No. 23 at 10). There, counsel for DHS moved to dismiss Petitioner's removal proceedings. (ECF No. 3 at 6; ECF No. 23 at 10). Petitioner did not oppose the dismissal, and the Immigration Court dismissed the removal proceedings. (ECF No. 3 at 6; ECF No. 23 at 10). ICE officers then arrested Petitioner once he left the courtroom. (ECF No. 3 at 7). According to Petitioner, DHS has "not provided any process to challenge [Petitioner's] arrest or opportunity to be heard before [his] arrest and det[ention]." (*Id.*). ICE subsequently placed Petitioner in expedited removal. (*Id.*; ECF No. 23 at 11).

On May 23, 2025, Petitioner filed an Emergency Motion to Reconsider Dismissal of Proceedings. (ECF No. 23-3). On June 12, 2025, the Immigration Court granted the Motion to Reconsider. (ECF No. 41 at 6; ECF No. 49 at 2). Additionally, Petitioner participated in a credible fear interview. (ECF No. 41 at 7). On May 31, 2025, DHS found that Petitioner has a credible fear of persecution. (ECF No. 23-2 at 45). Because of these circumstances, ICE took Petitioner out of the expedited removal process and placed him into Section 240 proceedings. (ECF No. 41 at 6). According to Petitioner, he "has not been notified of any basis for his ongoing detention now that he is again in 240 proceedings." (*Id.* at 7).

Furthermore, according to Petitioner, his SIJS proceedings are ongoing and active despite detention—although Petitioner notes that his detention has frustrated the SIJS process. (*Id.* at 8). On May 30, 2025, Petitioner had a Family Court hearing in New York City to obtain a guardianship order (a prerequisite for SIJS eligibility). (*Id.*). And "[t]he Family Court subsequently issued an order establishing [Petitioner's] mother's legal guardianship over him, rendering [Petitioner] *prima facie* eligible for SIJS." (*Id.*). Petitioner's SIJS application remains pending. (*Id.*).

Finally, on June 4, 2025, Petitioner "filed a request for humanitarian parole pursuant to 8 C.F.R. § 212.5(a)." (*Id.* at 11). To date, DHS has not ruled on this request.

## II. Jurisdiction

Habeas relief may be extended to a detainee when "[h]e is in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws ... of the United States." *Id.*; *see Maleng v. Cook*, 490 U.S. 488, 490 (1989).

Here, "[Petitioner] challenges only his continued detention itself." (ECF No. 41 at 13). Specifically, with his PI Motion, Petitioner challenges the constitutionality of his continued detention. (*See id.*). Because Petitioner is currently detained within the Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates his Fifth Amendment rights to due process, this Court has jurisdiction over his claims. *Cf. Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

## III. Preliminary Injunction Standard

Preliminary injunctive relief is an "extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). A party seeking to obtain such relief must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.*

4

Failure to satisfy the first factor of the analysis—a likelihood of success on the merits—necessitates denial of the injunctive request. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). It follows that district courts need not address the other factors if the moving party fails to establish the first factor. *See Marvin R.V. v. Tsoukaris*, No. 20-CV-5225, 2020 WL 6689760, at *5 n.2 (D.N.J. Nov. 13, 2020) (collecting Third Circuit cases to support the statement that "[because the p]etitioner has failed to meet his burden with respect to the likelihood of success on the merits, the Court need not address the remaining factors"); *see also Peter v. Att'y Gen. of New Jersey*, No. 23-CV-3337, 2023 WL 4627866, at *1 (D.N.J. July 19, 2023).

**IV.   Analysis**

Regarding the likelihood-of-success-on-the-merits factor, Petitioner argues that his continued detention violates his rights under the Fifth Amendment. (ECF No. 3 at 10) ("Because [Petitioner's] ongoing detention serves no legitimate purpose, was imposed without any pre-deprivation notice or opportunity to be heard, and deprives him of necessary and crucial ongoing care with potentially severe medical consequences, he is likely to succeed on the merits of his claim for deprivation of his rights under the Fifth Amendment ...."). Procedurally, he argues, his "detention constitutes a deprivation of liberty for which he was provided no notice []or opportunity to be heard prior to the deprivation[.]" (*Id.*). Substantively, he argues that his detention does not serve to "ensure a noncitizen's appearance at future immigration proceedings" or to "prevent danger to the community." (*Id.*) (cleaned up) (quoting *Zadvydas*, 533 U.S. at 690).[3]

---

[3] As stated above, Petitioner argues that "[b]ecause [his] ongoing detention serves no legitimate purpose, was imposed without any pre-deprivation notice or opportunity to be heard, and deprives him of necessary and crucial ongoing care with potentially severe medical consequences, he is likely to succeed on the merits of his claim for deprivation of his rights under the Fifth Amendment ...." (ECF No. 3 at 10). Following that sentence, Petitioner notes that he "presents this [PI Motion] on the basis of his first and third [c]auses of [a]ction[ in the Petition.]" (*Id.* at 10 n.1). The Petition's first cause of action regards an alleged violation of Petitioner's substantive due process rights under the Fifth Amendment. (ECF No. 1 at 20–21). Only in the second cause of action does Petitioner argue violation of his

5

Respondents argue that Petitioner is lawfully detained "as an inadmissible 'arriving alien' who is subject to mandatory detention" under 8 U.S.C. § 1225(b)(1)(B). (ECF No. 49 at 7). And inadmissible arriving aliens are not entitled to the procedures that Petitioner seeks, such as a bond hearing, so no Fifth Amendment violation exists here, whether procedural or substantive. (ECF No. 23 at 21).

For the following reasons, the Court agrees with Respondents. The Court first discusses the procedural due process issue and then the substantive due process issue. On both issues, Petitioner fails to show a likelihood of success on the merits.

### 1. Procedural Due Process

To determine what laws apply to Petitioner, the first question the Court must ask is whether Petitioner is an inadmissible arriving alien. He is.

In relevant part, DHS defines an arriving alien as follows:

> Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry[] .... An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the [INA], and even after any such parole is terminated or revoked....

---

procedural due process rights under the Fifth Amendment. (*Id.* at 21–22). Nonetheless, Petitioner's briefing raises arguments regarding his procedural due process claim—despite the footnote only referring to his first and third causes of action. (*See, e.g.*, ECF No. 3 at 10). Therefore, the Court examines the procedural and substantive due process issues.

Petitioner's third cause of action regards an alleged violation of the INA due to ICE placing Petitioner in expedited removal proceedings. (ECF No. 1 at 22–24). Petitioner clarifies that this cause of action is now moot. (ECF No. 41 at 23 n.10) ("Because [Petitioner] is no longer in expedited removal proceedings, Count III[ of the Petition], which alleged an Administrative Procedure Act violation based on [his] placement in expedited removal, is moot."). The Government and Court both agree that Count III of the Petition is moot.

Accordingly, the issues presently before the Court only regard Petitioner's Fifth Amendment claims.

8 C.F.R. § 1.2; *see also* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival …) shall be deemed for purposes of this chapter an applicant for admission.").

Title 8 U.S.C. § 1182 sets forth a myriad of categories that make an arriving alien "inadmissible." One such category is an alien "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and [other requisite documentation (e.g., a valid unexpired passport)]." 8 U.S.C. § 1182(a)(7)(A).

Here, Petitioner came into the United States at a port-of-entry as an applicant for admission. (*See* ECF No. 3 at 5; ECF No. 23 at 2). Thus, by definition, he is an arriving alien. Further, Petitioner arrived without the requisite documents to lawfully enter into the United States. (ECF No. 23-1 at 2) (citing 8 U.S.C. § 1182(a)(7)(A) as the reason why Petitioner is an alien inadmissible under § 1182). Accordingly, Petitioner is an inadmissible arriving alien.

The second question the Court must ask is: to what process is an inadmissible arriving alien entitled? In short, an inadmissible arriving alien, such as Petitioner, is entitled to an asylum interview based on a claim that the alien indicates an intention to apply for asylum or a fear of persecution; the alien's detention is mandatory absent DHS's discretionary decision to parole the alien; and the alien is not entitled to a bond hearing.[4]

Title 8 U.S.C. § 1225(b)(1) applies to aliens determined to be inadmissible due to lack of valid documentation under 8 U.S.C. § 1182(a)(7). Section 1225(b)(1) mandates the detention of

---

[4] This Court has held that "an arriving alien … has a constitutional due process right to a bond hearing *once his detention becomes unreasonable* to the same extent as an alien who is subject to removal under [8 U.S.C.] § 1226(c)." *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825–26 (W.D. Pa. 2025) (emphasis added). Unlike the petitioner in *A.L.*, who was detained for over ten months, here, Petitioner's detention cannot be deemed unreasonable considering ICE has only had him detained since May 21, 2025 (i.e., approximately two months). (*See* ECF No. 1 at 2).

arriving aliens who do not possess valid entry or travels documents when they arrive to the United States. *See Pierre v. Doll*, 350 F. Supp. 3d 327, 329 (M.D. Pa. 2018). "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). However, if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is taken out of expedited removal processes and referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(ii). If an immigration officer determines after the interview that the alien has a credible fear of persecution, then "the alien shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

"The only statute which permits an alien's release from § 1225(b) custody is 8 U.S.C. § 1182(d)(5)(A)," *Pierre*, 350 F. Supp. at 330, pursuant to which applicants for admission may be temporarily released on parole "in a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Pierre*, 350 F. Supp. at 330 ("Decisions under § 1182 are purely discretionary[.]"); *see also* 8 C.F.R. § 212.5(b) (setting forth general considerations for parole from custody). However,

> such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of [DHS], have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A); *see also Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 392 n.1 (3d Cir. 1999), *as amended* (Dec. 30, 1999) ("When parole is revoked, the alien reverts to the status of an applicant for admission[.]"). In short, the decision to grant and revoke parole to an inadmissible arriving alien is discretionary.

Here, after ICE initially processed Petitioner as an inadmissible arriving alien, ICE then provided Petitioner with a Notice to Appear and paroled him for two years pending his Section 240 hearings. (ECF No. 23-1). As evidenced by ICE's re-detention of Petitioner, ICE revoked Petitioner's parole—a decision left to the discretion of the Executive Branch.[5] Without Petitioner's grant of parole, his detention is mandatory as an inadmissible arriving alien. 8 U.S.C. § 1225(b)(1).

Petitioner received his asylum interview, and because Petitioner passed his credible fear interview, he is no longer in expedited removal proceedings. But under 8 C.F.R. § 235.3(c)(1), any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [8 U.S.C. § 1229a (i.e., Section 240 of the INA)] shall be detained in accordance with [8 U.S.C. § 1225(b)]." Thus, under the applicable law, Petitioner's detention is lawful.

Compliance with the applicable INA statutes and DHS regulations satisfies procedural due process. *Roe v. Oddo*, No. 3:25-CV-128, 2025 WL 1892445, at *8 (W.D. Pa. July 9, 2025). Accordingly, the Court finds that Petitioner has not shown a likelihood of success on the merits of his procedural due process claim.

**2. Substantive Due Process**

---

[5] Respondents appear to explain why and how Petitioner's parole was revoked. The Court gleaned the following from Respondents' Brief in Opposition of the PI Motion (ECF No. 23 at 8–10) and provides it as way of background information: At the time of the Notice, DHS had in place a two-year parole process for certain natives of Venezuela who met eligibility requirements. *See Implementation of a Parole Process for Venezuelans*, 87 Fed. Reg. 63507 (Oct. 19, 2022), *as amended* 88 Fed. Reg. 1279 (Jan. 9, 2023). On March 25, 2025, DHS ended this parole program. *Termination of Parole Processes for Cubans, Haitians Nicaraguans, and Venezuelans [Termination of Parole Process for CHNV]*, 90 Fed. Reg. 13611 (Mar. 25, 2025). Under the *Termination of Parole Processes for CHNV*, DHS terminated the temporary parole period of all "aliens in the United States under the CHNV parole programs and whose parole ha[d] not already expired by April 24, 2025[,] ... unless the [DHS] Secretary makes an individual determination to the contrary." *Id.* at 13611.

Petitioner argues that "[t]he Fifth Amendment prohibits civil detention without 'special justification.'" (ECF No. 3 at 11) (quoting *Zadvydas*, 533 U.S. at 690). Petitioner states that, under *Zadvydas*, "[i]n the immigration context, detention is permissible to 'ensur[e] [a noncitizen's] appearance … at future immigration proceedings,' and to '[p]revent[] danger to the community.'" (*Id.*) (alterations in original) (quoting *Zadvydas*, 533 U.S. at 690). Petitioner thus concludes Respondents are violating his Fifth Amendment substantive due process rights because his detention does not serve to "ensure a noncitizen's appearance at future immigration proceedings" or to "prevent danger to the community." (*Id.*) (cleaned up) (quoting *Zadvydas*, 533 U.S. at 690). Petitioner's reliance on *Zadvydas* is misplaced.

*Zadvydas* held that the "post-removal-period statute," 8 U.S.C. § 1231(a)(6), "read in light of the Constitution's demands"—namely, the Fifth Amendment's Due Process Clause—could not be interpreted to allow an "indefinite detention" of aliens subject to a final removal order. *Zadvydas*, 533 U.S. at 682, 689. The Supreme Court expressly stated that "special justifications" are required for "*indefinite* civil detention," *id.* at 690 (emphasis added), and "[a]liens who have not yet gained initial admission to this country would present a very different question," *id.* at 682; *see also Leng May Ma v. Barber*, 357 U.S. 185, 188–90 (1958) (holding that an alien "paroled" into the United States pending admissibility had not effected an "entry").

Here, Petitioner's case is distinguishable from the petitioner's in *Zadvydas*. Unlike the latter, Petitioner is an inadmissible arriving alien subject to Section 240 proceedings. In addition, Petitioner's detention has not become so prolonged that it can be considered indefinite detention. Accordingly, the Court declines to extend *Zadvydas* to Petitioner's case. Rather, the Court finds that Petitioner's detention is *with* cause because it is mandated by 8 U.S.C. § 1225(b)(1). Thus,

the Court finds that Petitioner has not shown a likelihood of success on the merits of his substantive due process claim.[6]

V.      **Conclusion**

For the foregoing reasons, the Court **DENIES** Petitioner's Motion for a Preliminary Injunction at ECF No. 2.  An appropriate Order follows.

DATED: July 28, 2025

STEPHANIE L. HAINES
U.S. DISTRICT COURT JUDGE

---

[6] The Court is sympathetic to Petitioner's medical concerns.  However, Petitioner has applied to be re-paroled due to his medical condition.  (*See* ECF No. 41 at 13).  Indeed, a category of persons who may meet 8 U.S.C. § 1182(d)(5)(A)'s parole requirement of "urgent humanitarian reasons or significant public benefit" includes "[a]liens who have serious medical conditions in which continued detention would not be appropriate."  8 C.F.R. § 212.5(b)(1). ICE is currently considering Petitioner's humanitarian parole application and is positioned to make the decision whether continued detention is warranted given Petitioner's medical condition.  Additionally, according to Respondents, Petitioner has already been seen by physicians at Moshannon Valley Processing Center, including a consultation with an infectious disease physician (on June 26, 2025), who recommended a course of treatment.

The Court also notes that Petitioner is able to pursue his SIJS while detained, as evidenced by the fact that the Family Court issued Petitioner's guardianship order on May 30, 2025 (i.e., at a time while Petitioner was detained).  (*See* ECF No. 41 at 10).

11